IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RICH ELLISON                                                                                          PLAINTIFF

VS.                                                            CIVIL ACTION NO. 3:06-CV-474 HTW-LRA

BLUE CROSS AND BLUE SHIELD
OF MISSISSIPPI                                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before this court is the motion of the defendant Blue Cross and Blue Shield of Mississippi (hereinafter "Blue Cross") for summary judgment; said motion filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure [**Docket No. 15**]. In his Complaint, plaintiff Rich Ellison asserts state-law causes of action against Blue Cross for breach of contract, breach of the duty of good faith and fair dealing, and bad faith. All these claims, says Blue Cross, arise from its denial of benefits claimed by plaintiff relative to his medical treatments for gastric by-pass surgery and its complications; said claims earlier submitted to defendant by plaintiff under a group Plan governed by the Employee Retirement Income Security Act of 1974, Title 29 U.S.C. 1002, *et seq*. ("ERISA"). Therefore, says Blue Cross, plaintiff's state law claims for damages are pre-empted by Title 29 U.S.C. § 1144(a).[1] Moreover, says Blue Cross, the benefit plan in question by its terms provides no coverage for the procedures undergone by the plaintiff.

---

[1] ERISA's preemption clause, Title 29 U.S.C. § 1144(a), states that with certain exceptions, ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..."

Originally filed in the Circuit Court for the First Judicial District of Hinds County, Mississippi, this lawsuit was removed by Blue Cross from that state court forum to this federal court under the auspices of Title 28 U.S.C. 1441.[2]  Because ERISA overshadows this dispute, Blue Cross asserted that the jurisdictional predicate for removal was "federal question," Title 28 U.S.C. § 1331.[3]

## STATEMENT OF THE FACTS

The instant case involves a dispute over coverage pertaining to gastric by-pass surgery had by the plaintiff Rich Ellison, M.D., at the Baylor University Medical Center in Dallas, Texas.  Ellis was covered under a policy issued by Blue Cross for the Lakeland Radiologists, P.A. plan, Group No. 21604.

After the procedure, Ellison began suffering abdominal pain which was diagnosed as a gastric leak.  Ellison underwent additional surgery at St. Dominic Jackson Memorial Hospital in Jackson, Mississippi, to correct this problem.  Significantly, Ellison did not seek coverage under the policy for the initial surgery.  He only did so relative to costs incurred with the corrective surgery.  Ellison filled out the forms for his group insurance benefits and was informed by Blue Cross that the type surgery he had undergone was not covered.

---

[2]Title 28 U.S.C. § 1441(b) provides that, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

[3]Title 28 U.S.C. § 1331 grants the district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

Blue Cross contends in its motion for summary judgment that the Lakeland Radiologists, P.A. plan, Group No. 21604, the medical benefit plan in question, does not cover surgical procedures relating to weight reduction programs such as gastric by-pass, or other such treatments for obesity. Excluded from coverage, says Blue Cross, are surgery for morbid obesity, removal of excess fat or skin following weight loss, regardless of medical necessity, and any services at a health spa or similar facility. Blue Cross refers to Article XVI of Ellison's benefit plan at page 58. Article XVI of Ellison's benefit plan, paragraph 30, states that, "[w]eight reduction programs or treatment for obesity including any Surgery for morbid obesity or for removal of excess fat or skin following weight loss, regardless of Medical Necessity, or Services at a health spa or similar facility," are excluded from benefits. Additionally, paragraph 62 provides an exclusion from benefits for "[c]harges for all medical complications which arise as the result of the Member receiving non-covered medical, surgical or diagnostic services. Examples of non-covered medical, surgical or diagnostic services include, but are not limited to, *gastric bypass surgery*, liposuction, cosmetic surgery and elective abortions." Blue Cross contends that no genuine issue of material fact is presented with respect to any of the claims asserted, that the benefit plan offers no coverage whatsoever, and that Blue Cross is entitled to summary judgment as a matter of law.

Also before the court is the response/cross-motion for summary judgment submitted by the plaintiff Richard Ellison [**Docket No. 20**]. Ellison, a radiologist at St. Dominic's Hospital in Jackson, Mississippi, argues that he suffered from severe insulin-dependent diabetes mellitus with abnormal lipid and cholesterol levels. Ellison

3

says that he is allergic to the medications ordinarily prescribed for high lipids and cholesterol. Faced with an increased need for insulin and no available treatment for Ellison's serum abnormalities, says Ellison, Ellison's physician, Dr. Joseph A. Kuhn recommended that Ellison undergo gastric by-pass surgery, notwithstanding that Ellison was not an ordinary candidate for such a procedure (six feet tall, 234 pounds, and not morbidly obese). This surgery was performed at Baylor University Medical Center in Dallas, Texas. Ellison says the procedure enabled him to achieve a "complete cure" for his diabetic condition, as well as for his high lipids and cholesterol. Ellison states that his second surgery at St. Dominic Hospital was simply corrective, to fix a leakage, and not cosmetic.

Ellison emphasizes that he has not undergone any weight-loss or cosmetic surgery procedures not covered by his insurance plan, and that Blue Cross has acted in bad faith by refusing the coverage that Ellison has requested.

Ellison asks this court to deny the Blue Cross motion for summary judgment and to grant his motion for summary judgment, including damages and attorney fees. Ellison's *ad damnum* clause seeks actual damages, compensatory damages, damages for emotional distress, attorney fees, costs, and any other damages permitted by law (an inference of punitive damages), including prejudgment and post-judgment interest.

## THE MATTER OF ERISA PREEMPTION

Ellison apparently contested ERISA preemption at first, but now has changed his mind.

Under ERISA, "complete preemption" occurs where a state-law cause of action falls within the scope of a particular enforcement provision in ERISA § 502.[4] *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003). A state-law cause of action falls within the scope of an ERISA § 502 enforcement provision when a plan participant or beneficiary seeks to recover benefits due or to enforce rights under an ERISA plan. *See Transitional Hospitals Corporation v. Blue Cross and Blue Shield of Tex*as, 164 F.3d 952, 954 (5th Cir. 1999) (noting that state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud all are preempted by ERISA when the plaintiff seeks to recover benefits owed under the plan to a plan participant). When a plan participant or beneficiary sues to recover benefits or enforce rights under an ERISA plan, the plaintiff's state-law causes of action are completely preempted and recast as federal causes of action. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). When there is complete preemption, federal question jurisdiction exists regardless of how the complaint is pleaded, and removal is proper. *Id*.

## IS THERE AN ERISA PLAN HERE?

The Blue Cross plan in question certainly appears to be an employee welfare benefit plan, the very type covered by ERISA. An employee welfare benefit plan is defined at Title 29 U.S.C. § 1002(1) as, "any plan, fund or program which was

---

[4] ERISA § 502 states as follows in relevant part: "A civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan ." *See* Title 29 U.S.C. § 1132(a)(1)(B).

heretofore or is hereinafter established or maintained by an employer or an employee organization, or by both, to the extent such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance of otherwise, (A) medical, surgical, or hospital care of benefits, or benefits in the event of sickness, accident, disability, death or unemployment." This quote from the statute may be dissected into the following elements: (1) a plan, fund or program; (2) established or maintained; (3) by an employer or by an employee organization, or both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits; (5) to participants or their beneficiaries. *Meredith v. Time Insurance Company*, 980 F.2d 352, 355 (5th Cir. 1993). Fifth Circuit case law further provides that an ERISA plan has been established if "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991); *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 240 (5th Cir. 1990).

In the instant case, the parties have submitted only a portion of the Lakeland Radiologists, P.A., benefit plan, Group No. 21604, for this court's perusal. Blue Cross has submitted portions of the plan which focuses wholly on the exclusion of procedures relating to weight-loss and weight-loss programs. Other provisions of the benefit plan indicate that the benefits provided are for healthcare, and that the beneficiaries are the employees and principals of Lakeland Radiologists, P.A. The plan appears to funded by the aforesaid group insurance policy purchased from Blue

Cross by Lakeland Radiologists, P.A. Moreover, neither party argues against the presence of an employee benefit plan which preempts state law, or that any Safe Harbor Provision[5] excludes the benefit plan from ERISA preemption.

Thus, this court finds that the instant action has been brought by Ellison for specific performance of the reimbursement provisions of his ERISA plan.[6] *See* Title 29 U.S.C. § 1132(a)(3), providing that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ... ."

Appropriate equitable relief under Title 29 U.S.C. § 1132(a)(3)(B) includes only "those categories of relief that were typically available in equity." *Cooperative Benefit Administrators, Inc. v. Ogden,* 367 F.3d 323, 330-31 (5th Cir. 2004). The Fifth Circuit reasons that a contrary interpretation, that is, one which would allow a plaintiff to bring

---

[5]The Safe Harbor Provision applies only if all four of the following features are present in a plan otherwise covered by ERISA: (1), no contributions are made by an employer or employee organization; (2), participation [in] the program is completely voluntary for employees or members; (3), the sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4), the employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs. 29 C.F.R. § 2510.3-1(j)(1)-(4).

[6]In his motion for summary judgment, Ellison states that he is seeking to recover only the medical expenses Blue Cross has denied, an amount Ellison claims to be $196,810.56, plus attorney fees.

an action for monetary damages, "the classic form of legal relief," - "would limit the relief not at all" and "render the modifier [equitable ] superfluous." *Id.*; *see also Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. at 210, 221, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (an action that seeks "to impose personal liability on [a defendant] for a contractual obligation to pay money" is "legal" in nature and unauthorized by § 502(a)(3)); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, P.C.*, 354 F.3d 348, 356 (5th Cir. 2003); and *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 444 (5th Cir. 2002).

This above authority persuades the court that Ellison's claim for relief is limited under ERISA to the amount that would have been paid under his benefit plan only if his gastric by-pass surgery is covered by the plan. Ellison also may claim attorney fees and costs under ERISA. *See* Title 29 U.S.C. § 1132(g)(1) which provides that, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

### STANDARD FOR SUMMARY JUDGMENT

The summary judgment standard applied to ERISA claims is unique. This is because this court acts in an appellate capacity reviewing the decisions of the administrator. *In Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court discussed which of two possible standards of review, *de novo* or abuse of discretion, should apply to ERISA actions. The *Firestone* Court stated:

> [a] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion."

*Id.*

An abuse of discretion standard applies when a claimant's policy reserves to the plan administrator the discretion to determine the claimant's entitlement to benefits. *Gooden v. Provident Life & Accident Insurance Company*, 250 F.3d 329, 332-34 (5th Cir. 2001). The abuse of discretion standard also is referred to as an arbitrary and capricious standard, and the United States Court of Appeals for the Fifth Circuit has noted that there is only a "semantic, not a substantive, difference" between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context. *Meditrust Financial Services Corporation v. The Sterling Chemicals , Inc.*, 168 F.3d 211, 214 (5th Cir.1999). In *Gooden*, the Fifth Circuit defined "abuse of discretion" as when a claim is denied "[w]ithout some concrete evidence in the administrative record." *Gooden*, 250 F.3d at 333. In *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir. 1999), a decision rendered prior to *Gooden*, the Fifth Circuit provided more detail regarding the abuse of discretion standard when it stated:

> Plainly put, we will not countenance a denial of a claim solely because an administrator suspects something may be awry. Although we owe deference to an administrator's reasoned decision, we owe no deference to the administrator's unsupported suspicions. Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.

9

*Id.* at 302.

The abuse of discretion standard must be adjusted in cases where the administrator has discretionary authority and is self-interested. The Supreme Court in *Bruch* held that a conflict of interest, i.e., a self-interested party, is a "factor" to be considered under the abuse of discretion standard. The Fifth Circuit in *Vega* articulated how courts are to measure this factor. *Vega*, 188 F.3d at 296-299. Courts are to apply a "sliding scale" standard, in which the abuse of discretion standard applies, but less deference is granted the administrator in proportion to the administrator's apparent conflict. *Id.* at 296. "The greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be." *Id.* at 297. The Fifth Circuit described the application of the sliding scale to the abuse of discretion standard as follows:

> We hold today that, when confronted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator. Under our own precedent and the Supreme Court's ruling in Bruch, we must give deference to the administrator's decision. That the administrator decides a claim when conflicted, however, is a relevant factor. In a situation where the administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.

*Id.*, at 299.

So, a plan administrator completes two tasks in making a benefit determination: (1) determining the facts underlying the benefit claim; and (2) construing the terms of

the plan. The administrator's factual determinations are reviewed for abuse of discretion. *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609-10 (5th Cir. 2006). The administrator's construction of the plan's terms also is reviewed for abuse of discretion where the plan expressly confers discretion. *Id.*, 610, *Bruch*, 489 U.S. at 115, 109 S.Ct. 948.

In the instant case, Blue Cross has submitted only a portion of the Lakeland Radiologists, P.A., benefit plan, Group No. 21604, focusing wholly on those provisions which exclude procedures relating to weight loss programs. Neither party has raised the matter of discretion, nor has either party contended that the plan does not grant discretion to the plan administrator. Consequently, this court is persuaded to presume that such discretion has been granted. However, even if the instant ERISA plan fails to confer discretion upon the administrator, this court, too, will review the administrator's conclusions *de novo*. *See Bruch*, 489 U.S., at 115.

## **RULES FOR INSURANCE CONTRACT CONSTRUCTION**

Congress expected when it enacted ERISA that a federal common law of rights and obligations under ERISA-regulated plans would develop. *Todd v. AIG Life Insurance*, 47 F.3d 1448, 1452-53 (5th Cir. 1995); *Jones v. Georgia Pacific Corporation*, 90 F.3d 114, 116 (5th Cir. 1996). Therefore, federal common law governs this case, including the interpretation of the policy provisions at issue. *Wegner v. Standard Insurance Company*, 129 F.3d 814, 818 (5th Cir. 1997).

In *Firestone Tire & Rubber Company v. Bruch*, the United States Supreme Court, analogizing ERISA plans to trust agreements, stated as follows:

> As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. ... The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment d (1959).

*Bruch*, 489 U.S. at 112.

Next, the general rule of construction pertaining to insurance policies, that of resolving ambiguities in favor of the insured[7], applies in the ERISA context. *Ramsey v. Colonial Life Insurance Company of America*, 12 F.3d 472, 479 (5th Cir. 1994); *Hansen v. Continental Insurance Company*, 940 F.2d 971, 982 (5th Cir. 1991).

Otherwise, this court follows the traditional principles of contract and trust law, construing a participant's claim " 'as it would have any other contract claim -- by looking to the terms of the plan and other manifestations of the parties' intent.' " *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996) (quoting *Bruch*, 489 U.S. at 112, 113).

## THE ARGUMENTS ON COVERAGE

The Baylor University medical records state that the purpose of Ellison's surgery was for "morbid obesity." The anesthesia report states that the surgical procedure to be performed was "laparoscopic gastric bypass." The Baylor University admitting history and physical documents state that Ellison's chief complaint was morbid obesity. The physician progress record notes that Ellison's pre-operation

---

[7]The doctrine of *contra proferentem* directs courts to resolve contractual ambiguities in insurance contracts against the drafter.

diagnosis was morbid obesity. Under the paragraph describing the indications for the recommended procedure appears the statement, "[t]his 42-year old male presents with a history of morbid obesity with a weight of 234 pounds and a body mass index of 34."

Following the surgery, and after complications had developed, Ellison's primary physician Dr. Kuhn wrote in Exhibit 7 that he had recommended this surgery for diabetes and bad lipids. Dr. Kuhn says specifically that he did not recommend the surgery for cosmetic purposes.

Blue Cross argues that Ellison's evidence, the letters from his physician and his own letter of explanation, are merely self serving, especially here where plaintiff now faces additional costs for corrective surgery and Dr. Kuhn has to ward off charges of "botched surgery." Blue Cross points to paragraph 30 of the exclusionary language of its policy which pertains to weight loss procedures, and paragraph 62 which excludes coverage for complications arising out of gastric by-pass surgery. These two paragraphs indicate that weight loss procedures are excluded, regardless of medical necessity.

The Blue Cross policy is covered under ERISA. As such, state law claims are preempted. Further, the Blue Cross' policy is not ambiguous; its provisions are clear. *Todd v. AIG Life Insurance Company*, 47 F.3d 1448, 1451-52 (5th Cir. 1995), stating that only if the terms remain ambiguous after applying ordinary principles of contract interpretation is the court compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured. Gastric by-pass surgery is not covered, regardless of medical necessity. The Baylor University medical records

further show that this surgery was performed as a weight reduction effort. Dr. Kuhn's subsequent statements to the contrary are simply not credible. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000) (noting that it is permissible for the trier of fact to infer the ultimate fact from the falsity of the employer's explanation, particularly if "disbelief is accompanied by suspicion of mendacity"). A motion for summary judgment cannot be resolved solely by conclusional allegations that a witness lacks credibility. *Thomas v. Great Atlantic and Pacific Tea Company, Inc.*, 233 F.3d 326, 331 (5th Cir. 2000). Nevertheless, "well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." *Id.*, citing *Reeves*, 120 S.Ct. at 2108. Accordingly, this court hereby grants the summary judgment motion for defendant, Blue Cross and Blue Shield, and denies the motion for summary judgment submitted by the plaintiff, Dr. Rich Ellison.

The court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED, this the 11th day of September, 2007.**

          **s/ HENRY T. WINGATE**
          **CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:06-cv-474 HTW-LRA
Memorandum Opinion and Order